[Civil No. 4268.   Filed February 10, 1941.]

[110 Pac. (2d) 219.]

HOOKER L. CAMPBELL, Appellant, v. CLAR-
ENCE T. ENGLISH and E. M. JONES, Doing
Business as ENGLISH FREIGHT CO., and
W. E. IVEY, Appellees.

Messrs. Barry & Boyle and Mr. Mark Wilmer, for Appellant.

Messrs. Struckmeyer & Flynn, for Appellees.

LOCKWOOD, C. J.—This is an appeal by Hooker L. Campbell, hereinafter called plaintiff, from an instructed verdict and judgment thereon in a case wherein Clarence T. English and E. M. Jones, doing business as English Freight Co., and W. E. Ivey were defendants. The action was one for personal injuries to plaintiff, which it was alleged were caused by the negligence of defendants. The facts necessary for a determination of the question involved in the appeal are not in dispute and may be stated as follows:

On the night of August 6, 1939, plaintiff was driving an automobile from Phoenix to Buckeye, Arizona. He left Phoenix about 9:45 P. M. and was proceeding in a westerly direction towards Buckeye when he collided with the rear of a truck belonging to defendants English and Jones, which was parked upon the highway without any rear lights. It had been raining intermittently through the evening, and at the time of the accident was still drizzling. Plaintiff was proceeding at about twenty to twenty-five miles per hour and as he approached the scene of the collision another car was approaching from the direction of Buckeye. When this car was approximately three hundred

yards away it dimmed its lights and plaintiff did likewise, causing his lights to be deflected downward and to the right. The road at that place was approximately thirty feet in width, including the hard surfaced shoulders of the pavement. Defendants' truck, which was a large one of the general freight type, painted white, was parked on the right hand side of the road as close as possible to the white center line of the highway. It had been so parked for at least fifteen minutes before the collision, and had no lights of any nature on its rear, nor any clearance nor warning lights placed about the rear of the truck, although it did have two headlights burning dimly. When plaintiff was within about twenty-five feet of the truck, he observed it for the first time and attempted to apply his brakes, which were in first-class condition, but was so close he could not stop until the front of his car hit the rear of the truck. Defendant Ivey, who was the driver of the truck, was in its cab but apparently did not know of the collision until the driver of the car approaching from the direction of Buckeye stopped, went back and rapped on the door of the cab. Plaintiff received certain severe injuries as a direct result of the collision, but on this appeal it is not necessary to discuss their nature nor extent. The complaint alleged negligence on the part of defendants in parking their truck on the highway without warning lights, while the answer admitted the employment of defendant Ivey, and the driving of the automobile by plaintiff, but denied the remaining allegations of the complaint.

Upon the trial plaintiff was cross-examined as to the circumstances under which he hit the rear end of the truck, and testified as follows:

"Q. Yes, and you ran into the rear of the truck? A. Yes, sir.

"Q. Why? Why didn't you stop? Your lights were shining right on the truck showing in that direction. Please answer the question.

. . . . . . . . . . . . . .

"A. I was too close on to it to stop.

"Mr. Struckmeyer: Q. You had been coming, however, for quite a distance fast? A. Yes, sir.

"Q. The Oldsmobile had what kind of brakes? A. Hydraulic brakes.

"Q. Hydraulic four-wheel brakes? A. Yes, sir.

"Q. Powerful brakes, a new car? A. Yes, sir, it was a new car.

. . . . . . . . . . . . . .

"A. I was sitting, my foot on the brake to stop my car, trying to stop my car, and when I hit the back end of the truck, the concussion and my weight against it broke my ankle over sideways.

. . . . . . . . . . . . . .

"Q. Whereabouts did you apply the brakes, how far back of the truck? A. Between 20 and 25 feet.

"Q. You applied the brake instantly when you saw the truck? A. Yes, sir.

"Q. 20 to 25 feet. And you were only going 20 to 25 miles an hour? A. Yes, sir.

. . . . . . . . . . . . . .

"Q. The long and short of it, Mr. Campbell, when you saw the truck you couldn't stop in time to avoid the crash, is that it? A. I couldn't avoid hitting him.

"Q. You couldn't stop in time to avoid the crash? Please answer that.

"The Court: Answer the question. A. Let's have the question again. . . . A. No, sir."

At the close of plaintiff's case defendants moved for an instructed verdict on the ground that it appeared affirmatively by plaintiff's own testimony that he was guilty of negligence which was a proximate cause of the accident. This motion was granted by the court, and judgment was rendered on the verdict accordingly.

█ The theory argued by defendants, and that upon which the trial court evidently instructed the

verdict is that this court has declared that it is negligence as a matter of law for the driver of an automobile to drive at such a speed that he cannot stop his car. within the range of his vision ahead, and cites in support of this ruling the cases of *Dennis* v. *Stukey,* 37 Ariz. 299, 294 Pac. 276, and *Coe* v. *Hough,* 42 Ariz. 293, 25 Pac. (2d) 547, 550. We have laid down the following rule in the latter case:

" . . . If an autoist cannot see where he is going he should stop. If his vision is limited he should have such control of his car as to be able to stop within the radius of his vision. If he violates these reasonable and sane rules and runs into some one who is at the time exercising reasonable care, he is, we think, guilty of legal negligence."

We affirm that rule as the correct and salutary law of the road. An automobile in motion may be a most powerful instrumentality of destruction to life and property, and one using it must do so in such a manner that he can control its actions within the limits of his vision. If the law of contributory negligence were the same in this jurisdiction as it is in most others, we should unhesitatingly say that upon the record made, the trial court was justified in its ruling, for the evidence of plaintiff himself shows that he was driving a new car with good hydraulic brakes at such a speed that he could not stop it within the range of his vision.

Common law negligence may be defined as a failure to act as reasonable and prudent persons would act under the circumstances. *Salt River Valley Water Users' Assn.* v. *Compton,* 39 Ariz. 491, 8 Pac. (2d) 249. *And the court always had the final decision as to what the conduct of a reasonable and prudent man under the circumstances should have been.* If the evidence was such that reasonable men might differ as to whether the proper course was followed, the existence of negligence was for the triers of fact. If, on the

other hand, the evidence was such that all reasonable men would agree on that question, the court instructed the jury whether, as a matter of law, negligence did or did not exist. These rules were applied in determining the existence of negligence on the part of either plaintiff or defendant, or both. The law also was and is, in the absence of a statute providing otherwise, that if an accident is caused by the concurrent negligence of plaintiff and defendant, the plaintiff may not recover.

Until the adoption of our Constitution these rules were all applicable to cases of negligence arising under the laws of Arizona. That Constitution, however, adopted a different rule in regard to the question of the existence of concurrent negligence on the part of plaintiff from that prevailing in almost every jurisdiction. It still left to the court the question of whether, as a matter of law, the evidence shows the defendant was not guilty of any negligence whatever which was a proximate cause of an accident. In such a case the court should instruct a verdict for defendant. But when the issue was whether an accident was caused by the concurrent negligence of plaintiff and defendant, or, as is commonly said, when the defense is plaintiff was guilty of contributory negligence, section 5 of article 18 of the Constitution changed the common law rule radically. It reads as follows:

''(Contributory negligence.)—The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury.''

■■ We have passed upon the meaning and effect of this constitutional provision in innumerable cases and have held, in effect, that when the issue is one of contributory negligence, that is to say, when there is evidence from which a jury could find, under the rules above set forth, that the defendant was

guilty of negligence, and one of the defenses is that plaintiff also was guilty of negligence, the Constitution takes away from either the trial or appellate court the right to determine whether, as a matter of either law or fact, the evidence shows such contributory negligence to exist, and leaves the question both of law and fact on that particular issue to the decision of the jury. *Dennis* v. *Stukey, supra; Inspiration Cons. Copper Co.* v. *Conwell,* 21 Ariz. 480, 190 Pac. 88; *Herzberg* v. *White,* 49 Ariz. 313, 66 Pac. (2d) 253. If the record in this case had been such as to permit the trial court to hold that there was no evidence whatever which would sustain a verdict that the defendant was guilty of any negligence which was a proximate cause of the accident, then it would have been justified in instructing a verdict in favor of defendant. But when, as in the present case, there is undoubtedly evidence from which a jury might properly infer that defendant was guilty of such negligence, then the question of whether plaintiff also was guilty of negligence becomes one, not of sole negligence of plaintiff, but of his contributory negligence, and that question must be left to the jury.

Applying these rules to the present case, since the trial court could not, as a matter of law, on the evidence say the defendant was guilty of no negligence whatever, it was prohibited by the constitutional provision from determining whether the plaintiff was guilty of contributory negligence, and should have left the issue of the ultimate liability of defendant to the jury, under proper instructions.

The judgment is reversed and the case remanded for a new trial, in accordance with the principles laid down herein.

McALISTER and ROSS, JJ., concur.